UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOE HAND PROMOTIONS, INC.,

      Plaintiff,

v.                                     Case No. 12-C-0159

DONALD L. JORGENSON
d/b/a DJ'S MOOSE KNUCKLE LODGE,

      Defendant.

**DECISION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Joe Hand Promotions, Inc. filed this Federal Communications Act lawsuit against defendant Donald L. Jorgenson, Jr., doing business as DJ's Moose Knuckle Lodge. Plaintiff alleges defendant violated the Communications Act of 1934, 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, by unlawfully intercepting and exhibiting a televised boxing event. The dispute between the parties involves the broadcast of "Ultimate Fighting Championship 108: Rashad Evans v. Thiago Silva." Plaintiff Joe Hand Promotions, Inc. alleges it was granted exclusive commercial distribution rights to the event, which was broadcast on January 2, 2010 via closed circuit television and encrypted satellite signal. (Pl.'s Proposed Findings of Fact (PPFOF), Dkt. 21, ¶ 2.) Plaintiff contends that Defendant Donald L. Jorgenson, Jr. unlawfully intercepted and exhibited the event at his commercial establishment, DJ's Moose Knuckle Lodge in Oneida, Wisconsin. (PPFOF ¶¶ 1-3.)

Plaintiff asserts that on January 2, 2010, its investigator, Michael J. Pfeifer, entered DJ's Moose Knuckle Lounge at 10:16 p.m. after viewing a large sign on the exterior wall of the bar advertising "UFC 108 LIVE TONIGHT." (Aff. of Michael J. Pfeifer, Ex. 1, Dkt. 13-3, at 25-26.) He was not charged a cover charge for entry into the bar. (*Id.*) While in DJ's Moose Knuckle Lodge, Pfeifer observed the broadcast of the event on three wall-mounted televisions. (*Id.*) The fight was also projected onto a large pull-down screen mounted on the wall behind the bar. (*Id.*) Pfeifer stayed in the bar for 21 minutes, during which time he counted the number of patrons in the establishment three times and concluded that 21-23 customers were present. (*Id.*) Plaintiff alleges that defendant did not have permission or pay a commercial licensing fee to broadcast the event on January 2, 2010. (PPFOF ¶¶ 4-5.)

Before me now is defendant's motion for summary judgment. Defendant contends that "there is no legal or factual basis for the individual liability of Donald L. Jorgenson, Jr." and therefore requests that he be dismissed. In addition, defendant seeks summary judgment in its favor as to both Count I (violation of 47 U.S.C. § 605) and Count II (violation of 47 U.S.C. § 553), and all claims for enhanced statutory damages pled pursuant to those statutes.

## SUMMARY JUDGMENT STANDARD

**A** motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where factual disputes do exist, the non-movant's version of events is accepted as true at this stage of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion;

however, there must be a *genuine* issue of *material* fact for the cause of action to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

**I.     Individual Liability**

Defendant first argues that Donald L. Jorgenson, Jr. cannot be held individually liable because he had no personal involvement in the alleged broadcast of the event at DJ's Moose Knuckle Lodge and had no knowledge of the circumstances related thereto. It is undisputed that Jorgenson is the owner of DJ's Moose Knuckle Lodge. (Decl. of Donald L. Jorgenson, Jr., Dkt. 13-1, ¶ 3.) The complaint alleged that "Donald L. Jorgenson, Jr., is an individual d/b/a DJ's Moose Knuckle Lodge" (Compl. at ¶ 6) and that he is "an individual with supervisory capacity and control over the activities occurring at the Establishment on January 2, 2010." (Compl. ¶ 7). Jorgenson has not argued that the "d/b/a" designation as applied to his business is incorrect, or provided any evidence that his business is organized as anything other than a sole proprietorship. Rather, he insists that although he is the owner of DJ's Moose Knuckle Lodge, he had no supervisory control

3

over the events occurring at his bar on January 2, 2010, and therefore cannot be held personally liable for the alleged broadcast of the event.

The designation "d/b/a" means "doing business as," but is merely descriptive of the person or corporation who does business under some other name. *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977). "Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations." *Plumbers' Pension Fund v. Wright*, No. 86-C-1485, 1987 WL 10577, at *1 (N.D. Ill. May 1, 1987) (quoting *Duval*, 425 F. Supp. at 1387). As such, the owner or sole proprietor and their business are one and the same. *Smith v. Castaways Family Diner*, 453 F.3d 971, 978 (7th Cir. 2006) ("Legally, [the restaurant owner] as the sole proprietor *is* [the restaurant]; she is the individual, whether by hands-on management or delegation to others of her choosing, who decides the course of the business."); *Moriarty v. Svec*, 164 F.3d 323, 336 (7th Cir. 1998) (Manion, J., concurring) (noting that a sole proprietorship has no legal identity apart from the individual who owns it). Therefore, DJ's Moose Knuckle Lodge, so far as the evidence before me indicates, is nothing more than an assumed name, and not a legal entity. Rather, it is simply the name under which Jorgenson transacted his business. As there is no evidence that Jorgenson chose to organize his business as a corporation or other limited liability entity, he has asserted no basis for concluding he is sheltered from liability.

The parties direct the court's attention to numerous Federal Communications Act cases that are largely irrelevant, distinguishable, and in any event, not controlling as to the outcome here. In particular, defendant insists that *Joe Hand Promotions, Inc. v. Alvarado*, No. CV F 10-0907, 2011

4

WL 1740536 (E.D. Cal. May 4, 2011) is the "most on-point" case. However, even a cursory reading of *Alvarado* reveals that it does not further defendant's position. In *Alvarado*, as here, plaintiffs claimed that the owners of a bar establishment unlawfully intercepted and broadcast a closed-circuit fight. However, the similarities with this case end there. The *Alvarado* court granted the defendants' unopposed motion for summary judgment because the defendants, the Alvarados, had leased the bar premises to a tenant who operated a business–a bar–out of the building. The tenant had exclusive control over the premises at the time the event was unlawfully broadcast. *Id.* at *1. The Alvarados did not own the business, have employees working at the premises, have any financial stake in the business, or have any supervisory authority over anyone involved in the business or its activities. *Id.* Essentially, the Alvarados owned the building and their name was on the liquor license, but they otherwise "had nothing to do with the bar." *Id.* at *2. Moreover, there was evidence that the tenants had changed the television system to a satellite system and installed a black box, which allowed for the illegal interception. *Id.* As a result, the court found insufficient evidence to hold the Alvarados liable for the unlawful interception of cable or satellite signals.

In contrast, in *J & J Sports Productions, Inc. v. Delgado*, No. CIV 2:10-2517, 2012 WL 371630, at *4 (E.D. Cal. Feb. 3, 2012), the court held that the defendant could not escape liability based on her claim that she was personally unaware of the interception and exhibition of a closed-circuit boxing match, finding her lack of knowledge irrelevant. The court explained:

> Mrs. Delgado, who is sued in her capacity doing business as Super Burrito Taqueria, does not dispute that she, along with her husband, owns and runs Super Burrito Taqueria. It was her commercial establishment that broadcast the Program without authorization and, having chosen not to organize her business as a corporation or other form that would create a legal identity separate from its owners, she may be held liable for its wrongdoing.

5

*Id. See also J&J Sports Prods., Inc. v. Resendiz*, No. 08-C-4121, 2009 WL 1953154, at *2 (N.D. Ill. July 2, 2009) (finding the plaintiff had improperly named as defendants an individual and a business name, when the only entity that could be held liable for the unauthorized interception and exhibition of a boxing event was the corporate owner of the business).

It bears noting that in any case, it is simply beyond belief that the only possibility here is that Jorgenson was so absent from the operation of his business that he had absolutely no control over or knowledge that the alleged illegal broadcast occurred, as defendant's motion suggests. There is no evidence to suggest that Jorgenson had given up control over the premises or failed to gain any financial benefit whatsoever from the event being broadcast in his establishment. Indeed, it is reasonable to believe there must have been some anticipated benefit to showing the event, as evidenced by the large sign outside the bar announcing the event's broadcast. (Aff. of Michael J. Pfeifer, Ex. 1, Dkt. 13-3, at 31.) Rather, defendant seems to suggest that the mere fact that Jorgenson was not present at the exact time the event was broadcast absolves him of any responsibility. Surely, defendants do not, and cannot, argue that Jorgenson is not liable for anything that occurs at his business establishment while he is not physically present. In any case, even if the facts regarding Jorgenson's presence and control are material, they are certainly in dispute and unsuitable for resolution on summary judgment.

Defendant also asserts that Jorgenson cannot be held liable based on the sole fact that his name is on the liquor license for DJ's Moose Knuckle Lounge. However, the cases defendant cites are again unpersuasive. For example, defendant cites *Joe Hand Promotions, Inc. v. McInnis*, (May 5, 2011). In *McInnis*, the court found there was a genuine dispute of fact as to whether one of the defendants was an owner of a business. *Id.* at *9. The defendant was listed on the business's liquor

6

license and was a bartender, but the court otherwise found no evidence indicating she was an owner or had any connection to the alleged illegal broadcast at issue. *Id.* The court concluded the defendant's "status as a liquor licensee is not sufficient evidence to show that no genuine dispute as to her liability exists" where the defendant denied ownership of the business. *Id.* at *10. Conversely, here, defendant has not refuted that Jorgenson is the owner of DJ's Moose Knuckle Lounge and it is not his name on the liquor license alone that creates a basis for his liability. Therefore, while it may be true that an individual's status as a liquor licensee does not establish their liability under §§ 605 and 553, this does not relieve defendant from liability here. Accordingly, defendant's motion for summary judgment as to Donald L. Jorgenson will be denied.

## II.  Method of Interception

Second, defendant argues that summary judgment should be granted because plaintiff has failed to specify the method by which the event was illegally intercepted. Indeed, the complaint does not specifically allege how defendant intercepted the event. Rather, plaintiff pleads in the alternative by alleging a violation of both statutes, stating that "[w]ithout further discovery from and/or admission by the Defendant, Plaintiff cannot determine if the Defendant intercepted Plaintiff's signal via cable system, in violation of 47 U.S.C. § 553, or via a satellite transmission, in violation of 47 U.S.C. § 605." (Compl.¶ 24.) As plaintiff acknowledges, it may not simultaneously recover under both §§ 553 and 605, because the sections target two distinct types of piracy. *See United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996) (holding that 47 U.S.C. § 605 governs the interception of programming as it travels through the air, while 47 U.S.C. § 553 governs the interception of cable television programing traveling over a cable network).

7

Plaintiff has presented evidence that the event was broadcast at DJ's Moose Knuckle Lodge on January 2, 2010, that plaintiff owned the exclusive rights to distribute the event via closed circuit television and encrypted satellite signal, and that plaintiff did not authorize defendant to broadcast the event. (Aff. of Michael J. Pfeifer, Dkt. 13-3, at 25-31; Compl. ¶¶ 9, 12; Aff. of Joe Hand, Jr., Dkt. 22, ¶¶ 3-4, 9.) Plaintiff has also presented facts that, if true, support plaintiff's claim that the broadcast must have been intercepted illegally via satellite or cable. (Aff. of Joe Hand, Jr., Dkt. 22, ¶ 9; Compl. ¶¶ 12-13, 21, 24.) Viewing the facts in the light most favorable to the non-moving party and drawing all inferences in its favor, it is reasonable to find that defendant may be liable for illegally intercepting and broadcasting the event. The basis for that liability turns on whether the defendant intercepted the plaintiff's signal via coaxial cable or satellite. As I have stated previously, establishing the violation itself—and not the method of violation—is enough to proceed. *G&G Closed Circuit Events Inc. v. CCMC, Inc.*, No. 11-C-673, 2012 WL 2567171 (E.D. Wis. July 2, 2012). *See also Kingvision Pay-Per-VIew, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 955, 959 (E.D. Wis. 2001) (granting summary judgment for plaintiffs as to liability where plaintiffs alleged a violation of §§ 605 and 553, and stating "[s]ignals do not descramble spontaneously, not do television sets connect themselves to cable distribution systems.") Consequently, defendant's motion will be denied insofar as it seeks dismissal of Count I and Count II of plaintiff's complaint.

**IV.    Enhanced Statutory Damages**

Defendant also argues that there is no evidence that defendant committed a "willful" violation of either statute for the purpose of commercial advantage or private financial gain. "'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'" *Kingvision Pay–Per–View, Ltd. v. Scott E'S Pub., Inc.,* 146 F. Supp. 2d 955,

8

959 (E.D. Wis. 2001) (quoting *ON/TV v. Julien,* 763 F.2d 839, 844 (7th Cir. 1985)). Under §§ 605 and 553, a party whose rights have been violated can elect either actual damages or statutory damages. *See* § 605(e)(3)(C)(I); § 553(c)(3)(A). Where a plaintiff chooses statutory damages and the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the plaintiff's award may be increased by up to $50,000 under § 553, or up to $100,000 under § 605. *See* § 605(e)(3)(C)(iii); § 553(c)(3)(B).

As discussed, plaintiff has presented evidence that the event could not have been intercepted innocently or by mistake. (*See* Aff. of Joe Hand, Jr., Dkt. 22, ¶ 9.) There is also evidence that DJ's Moose Knuckle Lodge advertised the event before it took place. (Aff. of Michael J. Pfeifer, Ex. 1, Dkt. 13-3, at 25-26.) Plaintiff presented evidence that defendant did not order or pay for receiving the broadcast (Aff. of Joe Hand, Jr., Dkt. 22, ¶¶ 3, 7, 9-10*.*) Thus, a rational jury could find that defendant or its agents acted intentionally and with a disregard for the existence of §§ 605 or 553. Moreover, as the event was advertised outside the bar, broadcast on all of the televisions inside, and projected onto a separate large screen behind the bar, there is sufficient evidence to support an inference that the event was broadcast for the purposes of direct or indirect commercial gain. As a result, defendant's motion for partial summary judgment seeking dismissal of plaintiff's claim for enhanced statutory damages will be denied.

## III.   Defendant's Other Arguments

Defendant raises several other arguments in its motion for summary judgment that warrant little discussion.[1]  For example, defendant argues that plaintiff has produced no evidence that it was

---

[1] In addition to the arguments discussed herein, defendant incorporated by reference his prior motion for judgment on the pleadings arguing that plaintiff's cause of action is time barred. As that motion was previously denied, I will not discuss it here. (*See* Decision and Order denying motion for judgment on the pleadings, Dkt. 25.)

9

granted exclusive closed-circuit distribution rights to the event or had any proprietary or intellectual property rights to the event. However, plaintiff's distributorship agreement indicates otherwise. (Distributorship Agreement, Dkt. 13-4, Ex. 3 at 30-43; Ex. 4. at 45.). Defendant also points to the fact that Zuffa, LLC, the company that produces the pay-per-view event at issue, has filed more than one hundred federal lawsuits for signal piracy across the country. Yet, defendant does not explain how this is relevant here. As such, defendant offers no grounds upon which its motion can be granted.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for summary judgment is **DENIED**. The Clerk is directed to place this matter on the court's calendar for a telephone conference at which trial and pretrial dates will be set.

**SO ORDERED** this   3rd   day of January, 2013.

                                              s/ William C. Griesbach
                                              William C. Griesbach, Chief Judge
                                              United States District Judge